UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARRIN A. GRUENBERG,

        Plaintiff,

        v.                                                    Case No. 06-C-0256

TIM LUNDQUIST,
KATHLEEN BELAIRE,
HELENE NELSON,
DR. RODNEY MILLER,
and STEVE SPANBAUER,

        Defendants.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DOC. # 43) AND DISMISSING THE CASE

Plaintiff, Darrin A. Gruenberg, filed this *pro se* civil rights case pursuant to 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. Currently pending is the defendants' motion for summary judgment.

## I. FACTUAL BACKGROUND

The plaintiff filed this complaint against defendants Tim Lundquist, Kathleen Belaire, Helene Nelson, Dr. Rodney Miller and Steve Spanbauer, alleging that his constitutional rights were violated when he was denied admission to the Wisconsin Resource Center. By order dated September 9, 2006, the court granted the plaintiff leave to proceed *in forma pauperis* on an Eighth Amendment deliberate indifference claim. Subsequently, the defendants filed a motion for summary judgment, which is now fully briefed and ready for resolution.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id*.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id*. at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id*. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id*. at 323-24. Neither party

2

may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

## III. PRELIMINARY MATTERS

On January 9, 2008, the plaintiff filed his proposed findings of fact indicating that he disputes information in the defendants' proposed findings of fact. However, the plaintiff's proposed findings were due on or before June 4, 2007, and, therefore, are untimely. (*See* Order of May 18, 2007). Moreover, the plaintiff's proposed findings fail to include "specific citations to evidentiary materials in the record which support the claim that a dispute exists" as required under Civil L.R. 56.2(b)(1) (E.D. Wis.).

A court may, in its discretion, disregard proposed findings of fact that fail to adhere to the requirements set forth in the local rules. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *Tatalovich v. City of Superior*, 904 F.2d 1135, 1140 (7th Cir. 1990). Therefore, the plaintiff's proposed findings will not be considered when addressing the defendants' motion. However, the plaintiff's sworn complaint and affidavits are admissible as evidence. *See* Fed.R.Civ.P. 56(e)*; see also Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996)(a sworn complaint may be treated as an affidavit at the summary judgment stage).

3

## IV. RELEVANT UNDISPUTED FACTS

At all times relevant, the plaintiff was an adult inmate incarcerated in Wisconsin. Lundquist was employed as an Admissions Coordinator/Unit Manager at the Wisconsin Resource Center (WRC). (Affidavit of Tim Lundquist [Lundquist Aff.] ¶ 2). Steven Spanbauer was employed as a WRC Institution Complaint Examiner (ICE). (Affidavit of Steven Spanbauer [Spanbauer Aff.] ¶ 2). Kathleen Belaire was the Deputy Director at WRC. (Affidavit of Kathleen Belaire [Belaire Aff.] ¶ 2). Helene Nelson was the Secretary of the Wisconsin Department of Health and Human Services. (Affidavit of Helene Nelson [Nelson Aff.] ¶ 2). Dr. Rodney Miller was employed at WRC as a mental health forensic services manager. (Affidavit of Rodney Miller [Miller Aff.] ¶ 2).

**Treatment at WRC**

WRC was created to provide psychological evaluation, specialized learning programs, and supervision for inmates of the Wisconsin Department of Corrections (DOC) in need of extensive mental health services. (Lundquist Aff. ¶ 4). Admission to WRC is formal and the admission process is initiated when a psychological supervisor at the facility where an inmate is confined fills out a DOC-1479 form and sends it to the WRC admissions coordinator. (Lundquist Aff. ¶¶ 5-7).

Once the DOC-1479 form is received at WRC, it is screened by an admissions coordinator who then forwards the form to the admissions team for review. (Lundquist Aff. ¶ 8). The admissions team reviews the form to assess whether the inmate's psychological needs warrant placement at WRC. (Lundquist Aff. ¶ 9). Based on this review, the admissions team then makes an admission recommendation to the admissions supervisor. (Lundquist

4

Aff. ¶ 10). The admissions supervisor, in turn, makes the final decision whether to admit an inmate to WRC. (Lundquist Aff. ¶ 11).

On October 17, 2002, after complying with the admissions process, the plaintiff was admitted to WRC's anger management program. (Lundquist Aff. ¶ 12). During his treatment at WRC, the plaintiff received multiple conduct reports for, among other things, fighting with another inmate, displaying a lack of efforts and unwillingness to engage in treatment, lying to staff about his gambling, and threatening staff with physical violence. (Lundquist Aff. ¶ 14). Due to the plaintiff's conduct, the program review committee met on May 27, 2003, to assess the plaintiff's continued treatment at WRC. (Lundquist Aff. ¶ 15, Ex. 3). At this meeting, the program review committee (PRC) determined that the plaintiff was not at a manageable level for the medium custody treatment provided at WRC and concluded that he should be transferred to a maximum custody facility. (Lundquist Aff. ¶ 17, Ex. 3).

The plaintiff was advised that he could appeal the PRC's decision within thirty days under Wis. Admin. Code § DOC 302.18. (Lundquist Aff. Ex. 3). However, the plaintiff never sought review of the PRC's recommendation under this section. (Konitzer Aff. at 2).

**Treatment at Green Bay Correctional Institution**

On December 5, 2003, the plaintiff was transferred to Green Bay Correctional Institution (GBCI). (Lundquist Aff. ¶ 17; Affidavit of Gerald Konitzer [Konitzer Aff.] ¶ 10). Dr. Todd Hamilton examined the plaintiff on November 1, 2004, and found him to be agitated and preoccupied with a plan to re-enter WRC. (Affidavit of Todd Hamilton [Hamilton Aff.] ¶ 2). Based on this examination, Dr. Hamilton concluded that the plaintiff was fully in control of his behavior and did not present any mental health needs. (Hamilton Aff. ¶ 6). Therefore, Dr.

5

Hamilton did not recommend that the plaintiff be transferred back to WRC. (Hamilton Aff. ¶ 8).

**Treatment at Wisconsin Secure Program Facility**

From November 17, 2004, to April 18, 2005, the plaintiff was held at Wisconsin Secure Program Facility (WSPF). (Konitzer Aff. ¶ 12). Dr. Christine Apple examined the plaintiff during May 2005. (Affidavit of Christine M. Apple [Apple Aff.] ¶ 5). As a result, Dr. Apple found that the plaintiff was very angry and antisocial, but had no mental illness. *Id*. Hence, Dr. Apple did not refer the plaintiff to WRC for treatment. (Apple Aff. ¶ 9).

On April 14, 2005, the PRC reviewed the plaintiff's institutional placement at WSPF. (Pl.'s May 22, 2007, Resp. to Def.'s Mot., Ex. H). On that date, it was recommended that the plaintiff remain in maximum custody but be transferred to Racine Correctional Institution to complete his program segregation as a step inmate. *Id.* The plaintiff asked to be transferred to WRC, but was informed that he was not considered appropriate for placement there. *Id.* Also, the plaintiff was advised that he could appeal the PRC's decision under Wis. Admin. Code § DOC 302.18. *Id*. However, the plaintiff did not seek review of the PRC's decision under this provision. (Konitzer Aff. at 2).

**Treatment at Racine Correctional Institution**

From April 18, 2005 to November 14, 2005, the plaintiff was held at Racine Correctional Institution (RCI). (Konitzer Aff. ¶ 14). Dr. Michael Woody examined the plaintiff on July 13, July 15 and August 5, 2005. (Affidavit of Michael Woody [Woody Aff.] ¶ 4). During the July 13, 2005, examination, the plaintiff told Dr. Woody of his plan to gain readmission to WRC. (Woody Aff. ¶ 5). Dr. Woody spoke to the plaintiff regarding his uncooperative behavior, including incidents in which the plaintiff exposed his genitals to his

treating psychologists and refused to see a psychologist until he received the medication he desired. (Woody Aff. ¶ 6). At the July 15 and August 5, 2005, examinations, Dr. Woody concluded that the plaintiff had no mental illness and did not refer him to WRC for treatment. (Woody Aff. ¶¶ 7-11).

In September 2005, Dr. Apple also examined the plaintiff. (Apple Aff. ¶ 4). Dr. Apple concluded that the plaintiff was very angry and antisocial but had no mental illness. (Apple Aff. ¶ 5). Therefore, Dr. Apple did not refer the plaintiff to WRC. (Apple Aff. ¶ 14).

**Requests for Readmission to WRC**

Between December 5, 2003, and November 14, 2005, the plaintiff sent numerous letters to defendant Lundquist requesting readmission to WRC. (Lundquist Aff. ¶ 18). Lundquist discussed the letters with an admissions unit psychologist but did not forward them to the admissions team because they were not DOC-1479 forms. (Lundquist Aff. ¶ 19; Pl.'s June 26, 2007, Aff. ¶ 8).

Thereafter, the plaintiff sent letters to defendant Miller requesting admission to WRC. (*See* Pl.'s May 22, 2007, Resp. to Def.'s Mot. Ex. F, O). On August 25, 2004 and July 13, 2005, the plaintiff received responses to his letters, which stated that the decision to transfer an inmate to WRC is initiated by the correctional facility in which the inmate is housed. *Id*.

On July 24, 2005, the plaintiff filed Inmate Complaint RCI-2005-23013 complaining that:

> clinical staff at three different DOC institutions including here have determined I am in need of extensive mental/clinical treatment at WRC and have attempted numerous times to refer and send me there however Tim Lundquist and other

>           certain WRC staff have refused to accept me back
>           based on previous "negative behavior."

(Pl.'s May 22, 2007, Resp. to Def.'s Mot. Ex. (A)(1)). The next day, Inmate Complaint RCI-2005-23103 was rejected as being outside the scope of the Inmate Complaint Review System (ICRS). (Pl.'s May 22, 2007, Resp. to Def.'s Mot. Ex. (A)). Subsequently, on September 6, 2005, the reviewing authority affirmed the rejection of the complaint. *Id*. Thereafter, on September 15, 2005, the plaintiff addressed an Interview/Information request slip to Captain Slayton to inquire whether defendant Lundquist would accept him at WRC. (Pl.'s May 22, 2007, Resp. to Def.'s Mot., Ex. D). Slayton replied that defendant Lundquist was now the warden of Kettle Moraine Correctional Institution and, therefore, could not accept him at WRC. *Id*.

## IV. ANALYSIS

The defendants argue that the plaintiff's Eighth Amendment claim should be dismissed because he failed to exhaust his administrative remedies. Additionally, the defendants contend that they are entitled to summary judgment for the following reasons: (1) they were not personally involved in the alleged wrongdoing; (2) the plaintiff did not experience a serious medical need; and (2) the defendants did not act with deliberate indifference.

**1.   Exhaustion**

First, the defendants claim that the plaintiff failed to exhaust his allegation that he was denied admission to WRC. Specifically, the defendants submit that the plaintiff did

8

Case 2:06-cv-00256-CNC   Filed 01/16/08   Page 8 of 12   Document 107

not appeal the PRC decisions concerning his placement at WRC.[1]  The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), provides that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)a.

Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  A prisoner's failure to exhaust administrative remedies before bringing a § 1983 suit is an affirmative defense, which defendants must raise.  *Jones v. Bock*, 127 S. Ct. 910 (2007).

The Wisconsin Administrative Code provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule.  Wis. Admin. Code § DOC 310.05.  The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to Wisconsin inmates with complaints about prison conditions or the actions of prison officials.  Wis. Admin. Code § DOC 310.01(2)(a).  However, an inmate may not use the ICRS to raise issues concerning a PRC decision.  Wis. Admin. Code § DOC 310.08(2)(b).  Rather, an inmate may appeal a PRC decision concerning custody classification, transfer or institutional placement to the director within 30 days of the inmate's receipt of the decision.  Wis. Admin. Code § DOC 302.18.  After exhausting the appeals process in Wis. Admin. Code

---

[1] The defendants contend that the plaintiff had three opportunities to appeal an institutional placement decision made by the PRC.  Based on the evidence before the court, however, it appears that the plaintiff's placement at WRC was the subject of two, and not three, PRC hearings.  Regardless, the plaintiff does not dispute the defendants' contention that he never appealed any PRC decision.

§ 302.18, an inmate may use the ICRS to challenge only the procedure used in the PRC process. Wis. Admin. Code § DOC 310.08(3).

In the present case, it is undisputed that the plaintiff did not appeal either of the PRC decisions concerning his institutional placement. However, the plaintiff argues that he was not required appeal any PRC decision under § 302.18 because his complaint that he was denied admission to WRC arises only under the ICRS.

There is no dispute that the plaintiff filed an ICRS complaint on June 24, 2005, asserting that the defendants denied him entry to WRC, and that the plaintiff was informed on June 25, 2005, that this complaint was outside the scope of the ICRS. Therefore, the ICE recommended that the plaintiff's complaint be dismissed, a decision that was ultimately accepted by the reviewing authority.

Generally, matters outside the scope of a prison's complaint review system do not have to be exhausted because there is no available administrative process for pursuing them. *See* 42 U.S.C. § 1997e(a). However, in the plaintiff's case, there was an administrative process for him to exhaust. Specifically, he was required to appeal any PRC decision under § 302.18. After the PRC appeal procedure ended, the plaintiff was required to file an inmate complaint under ICRS to exhaust his administrative remedies. *See* Wis. Admin. Code § DOC 310.08(3).

The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's

10

Case 2:06-cv-00256-CNC   Filed 01/16/08   Page 10 of 12   Document 107

administrative rules require"). When a prisoner causes the unavailability of the grievance process by failing to file a grievance in a timely manner, "the process is not unavailable but rather forfeited." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Here, the plaintiff attempted to file an ICRS complaint regarding his institutional placement before he appealed the PRC decisions under § 302.18. Inasmuch as the plaintiff neglected to file his complaints in the sequence required by the Wisconsin Administrative Code, he failed to properly exhaust his Eighth Amendment claim.

The plaintiff argues that relief was unavailable under § 302.18 because he was not denied admission to WRC as a result of a PRC hearing. Notably, the plaintiff has offered no admissible evidence to support this position. Moreover, the May 27, 2003, and April 14, 2005, PRC hearings expressly addressed the issue of whether the plaintiff was appropriate for placement at WRC. To the extent the plaintiff claims that he neglected to file an appeal under § 302.18 because he did not believe an appeal could provide him the relief he sought, he is claiming futility which "is not an excuse for failing to exhaust." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 536 (7th Cir. 1999)("no one can know whether administrative requests will be futile; the only way to find out is to try."). Furthermore, there is no indication that this is a case where the plaintiff's administrative remedies were not available. *See, e.g., Brown v. Croak*, 312 F.3d 109, 111-112 (3d Cir. 2002)(reversing the granting of summary judgment where plaintiff claimed that he was told to await completion of investigation before filing complaint); *see also Hemphill v. New York*, 380 F.3d 680, 690 (2d Cir. 2004)(case remanded to determine whether the allegedly confusing regulations presented special circumstances that justified plaintiff's failure to follow normal prison grievance procedures).

Finally, the plaintiff believes that his correspondence with defendants Lundquist and Dr. Miller exhausted his Eighth Amendment claim because he was denied admission to WRC after the defendants received his letters. Again, the plaintiff has offered no evidence (other than a bald assertion) that these defendants had the authority to, and actually did, deny him readmission to WRC. Such "conclusory allegations . . . without support in the record, do not create a triable issue of fact." *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)(citing *Patterson v. Chi. Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998)). Moreover, assuming the plaintiff's assertion is true, it is unclear how this excuses him from complying with the procedures set forth in the Wisconsin Administrative Code. As discussed, the plaintiff is required to "file complaints and appeals in the place, and at the time, the prison's administrative rules require," *Pozo,* 286 F.3d at 1023, which he failed to do. To the extent the plaintiff claims that he did not understand the exhaustion requirements, his lack of awareness of the grievance procedure does not excuse his noncompliance. *See Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)(holding that if administrative remedies are available, the prisoner must exhaust them).

For the foregoing reasons,

**IT IS ORDERED** that the defendants' motion for summary judgment (Doc. # 43) is **GRANTED.**

**IT IS FURTHER ORDERED** that this action is **DISMISSED.**

Dated at Milwaukee, Wisconsin, this 16th day of January, 2008.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. DISTRICT JUDGE